

FILED

May 13 2019, 7:52 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jennifer Fehrenbach Taylor
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Abigail R. Recker
Robert J. Henke
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re the Termination of the
Parent-Child Relationship of
S.K., E.K., and M.K. (Minor
Children), and

S.K., Sr. (Father),

*Appellant-Respondent,*

v.

Indiana Department of Child
Services,

*Appellee-Petitioner.*

May 13, 2019

Court of Appeals Case No.
18A-JT-2200

Appeal from the Warren Circuit
Court

The Honorable Hunter J. Reece,
Judge

Trial Court Cause Nos.
86C01-1802-JT-10
86C01-1802-JT-11
86C01-1802-JT-12

**Mathias, Judge.**

[1] The Warren Circuit Court terminated S.K.'s ("Father") parental rights to his three minor children, and Father appeals. He raises three issues, which we restate as:

    I.   Whether the trial court abused its discretion when it allowed the children's therapist to testify concerning statements made by the children;

    II.   Whether the Department of Child Services ("DCS") proved that it made reasonable efforts to reunify the children and Father; and

    III.   Whether the trial court's order terminating Father's parental rights is supported by clear and convincing evidence.

[2] We affirm.

## Facts and Procedural History

[3] Father has three children: S.K., Jr. born in October 2004, E.K. born in May 2006, and M.K. born in March 2011. DCS removed the children from Father's care in September 2016 after Father was arrested and charged with murdering the children's mother. Father was also charged with arson for burning down Mother's home. DCS placed the children with D.H., their maternal grandmother. Father has not seen the children since their removal and his incarceration.

[4] On September 29, 2016, DCS filed petitions alleging that the children were Children In Need of Services ("CHINS"). Father admitted that he was unable to provide for the children's needs due to his incarceration. The children were

adjudicated CHINS on January 11, 2017. Father was ordered to complete certain services upon his release from incarceration.

[5] In January 2018, Father was found guilty of murdering the children's mother and Level 4 arson. On February 22, 2018, Father was ordered to serve an aggregate sentence of sixty-five years for his murder and arson convictions. Father has appealed his convictions, and his appeal is pending.

[6] On February 7, 2018, the trial court entered an order that reasonable efforts to reunify Father and the children were no longer necessary pursuant to Indiana Code section 31-34-21-5.6. Shortly thereafter, DCS filed petitions to involuntarily terminate Father's parental rights to all three children.

[7] Throughout the CHINS and termination proceedings the children have been under the care of a therapist, who also provides family therapy for the children and maternal grandmother. The children are understandably traumatized by their Mother's murder and Father's imprisonment. They are both angry with Father and afraid of him. Tr. p. 105. The oldest child, S.K., Jr., suffers from panic attacks around court dates.

[8] A fact-finding hearing was held on August 15, 2018. The children's therapist testified that each child's mental health is improving, but she does not recommend visitation with Father because this would cause the children to suffer additional trauma. *Id.* at 109–110. The children still struggle with anxiety and they need stability. The children's court appointed special advocate and their guardian ad litem also testified that the children need stability and

terminating Father's parental rights is in the children's best interests. *Id*. at 126, 128.

[9] DCS intends for the children to be adopted by their maternal grandmother. The children are doing well in their placement with their grandmother, and they are bonded to her and trust her. Their school performance has improved as well. Father testified that he would voluntarily terminate his parental rights if he could be assured that maternal grandmother would be allowed to adopt the children. *Id.* at 20–21.

[10] On August 17, 2018, the trial court issued an order terminating Father's parental rights to all three children. The trial court noted that the children were previously adjudicated CHINS in 2011 and were removed from parents. In those proceedings, a no contact order was served on Father "for the protection of each of the Children in the respective cases." Appellant's Br. at 22. Father completed assessments for substance abuse, domestic violence, and mental health. The no contact order eventually expired, and the 2011 CHINS proceedings were dismissed at DCS's request.

[11] The trial court also found that in April 2016, Father was charged with and arrested for battery resulting in bodily injury for battering the children's mother. A no contact order was entered against Father for a second time, and the children were removed from Father's care. DCS filed a CHINS petition for the children in June 2016, but the trial court determined that the petition was not supported by probable cause and did not authorize DCS to file the petition. The

battery case was dismissed after Father murdered the children's mother in September 2016.

[12] Next, the trial court found that Father does not have the ability to care for his children. The court also noted that although Father was not ordered to participate in programs while incarcerated, he has not made any effort to voluntarily complete programming to better his ability to parent. The court also found:

> 20. The Children are no longer bonded to their father.
>
> 21. The Children need continuity and stability, as they suffer from anxiety caused by the prolonged litigation and uncertainty of permanency.
>
> 22. The Children are angry at their Father for the murder of their Mother, irregardless of the Father's contention of his innocence or the jury finding of his guilt.
>
> 23. Father has been incarcerated almost two years already and had no contact with the Children since the murder of the Mother.
>
> 24. Father was not subject to any order from any court preventing him from having contact with the Children since the murder of the Mother.
>
> 25. Children are well adjusted, doing better in school now that they are in placement, and fully engaged in counseling.
>
> 26. Father is incapable of caring for the Children or participating in their child rearing due to the length of his sentence.
>
> 27. The Court takes judicial notice of the process involved in criminal appeals; the time it takes to complete such complex appellate cases as a murder trial; the fact that either party could seek transfer to our Indiana Supreme Court; and that

proceeding[s] for post-conviction relief are equally time consuming. Further, should the Father prevail in his criminal appeal and assuming the State does not seek transfer, the best possible result would be remand for a new trial, which would likely return the case to where Father was two years ago. The Court further takes judicial notice that Father's trial attorney in his criminal case withdrew on 3/16/2018, citing essential break down in the attorney-client relationship and declining to proceed with the appeal. In the event of [remand], while the State may be immediately prepared to proceed, a new defense counsel would need to be appointed and become familiar with the case from square one.

28. The Father is currently unemployed, housed in the Department of Correction[] under a 65-year sentence (less time served), and has paid no child support in the past, almost two years, there is a history of substantiated neglect with these Children, and he has a criminal history.

Appellant's App. pp. 39–40. The trial court also found that any visitation or placement with Father would cause additional trauma to the children, and that the children are stable, secure, and bonded to their maternal grandmother.

[13] The trial court terminated Father's parental rights after concluding that the conditions that resulted in the children's removal or reasons for placement outside the parent's home will not be remedied, that continuation of the parent-child relationship poses a threat to the well-being of the children, and termination of Father's parental rights was in the children's best interests. Father now appeals.

## Standard of Review

[14] "We have long had a highly deferential standard of review in cases involving the termination of parental rights." *C.A. v. Ind. Dep't of Child Servs.*, 15 N.E.3d 85, 92 (Ind. Ct. App. 2014).

> We neither reweigh evidence nor assess witness credibility. We consider only the evidence and reasonable inferences favorable to the trial court's judgment. Where the trial court enters findings of fact and conclusions thereon, we apply a two-tiered standard of review: we first determine whether the evidence supports the findings and then determine whether the findings support the judgment. In deference to the trial court's unique position to assess the evidence, we will set aside a judgment terminating a parent-child relationship only if it is clearly erroneous.

*Id.* at 92–93 (citations omitted). "A judgment is clearly erroneous if the findings do not support the trial court's conclusions or the conclusions do not support the judgment." *In re R.J.*, 829 N.E.2d 1032, 1035 (Ind. Ct. App. 2005).

## Hearsay Testimony

[15] First, Father argues that the trial court erred when it admitted the children's therapist's testimony concerning statements the children made to the therapist. The only statements that Father specifically objected to at the fact-finding hearing and in his brief are statements the therapist made concerning whether the children were aware that Father killed their mother and whether they understood that they could visit Father. Appellant's Br. at 26–27.

Hearsay is a statement "not made by the declarant while testifying at the trial or hearing; and is offered in evidence to prove the truth of the matter asserted." Ind. Evidence Rule 801(c). Hearsay statements are not admissible, except pursuant to certain exceptions within the Rules of Evidence. *See* Ind. Evid. R. 802.

> One such exception generally permits statements made for the purpose of medical diagnosis or treatment to be admitted into evidence, even when the declarant is available. The statements must be "made by persons who are seeking medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Rule 803(4)'s exception is grounded in a belief that the declarant's self-interest in obtaining proper medical treatment makes such a statement reliable enough for admission at trial—more simply put, Rule 803(4) reflects the idea that people are unlikely to lie to their doctors because doing so might jeopardize their opportunity to be made well.

*VanPatten v. State*, 986 N.E.2d 255, 260 (Ind. 2013) (internal citations omitted).

We apply a two-step analysis for admission under Rule 803(4): "First, 'is the declarant motivated to provide truthful information in order to promote diagnosis and treatment,' and second, 'is the content of the statement such that an expert in the field would reasonably rely on it in rendering diagnosis or treatment.'" *Id*. (quoting *McClain v. State*, 675 N.E.2d 329, 331 (Ind. 1996)). "[T]he declarant must subjectively believe that he was making the statement for the purpose of receiving medical diagnosis or treatment." *Id.*

But . . . where the declarant is a young child brought to the medical provider by a parent, we have acknowledged that such an inference may be less than obvious. Such young children may not understand the nature of the examination, the function of the examiner, and may not necessarily make the necessary link between truthful responses and accurate medical treatment. In that circumstance, "there must be evidence that the declarant understood the professional's role in order to trigger the motivation to provide truthful information." This evidence does not necessarily require testimony from the child-declarant; it may be received in the form of foundational testimony from the medical professional detailing the interaction between him or her and the declarant, how he or she explained his role to the declarant, and an affirmation that the declarant understood that role. But whatever its source, this foundation must be present and sufficient.

*Id.* at 261 (internal citations omitted).

[18] The children's therapist testified to her opinions concerning the children's mental state based on conversations she had with the children on the day Father killed their mother and statements made during therapy. The initial conversations between the therapist and the children were not for the purpose of therapy, but simply to help the children process their feelings and provide them with support. Tr. p. 116. We agree that, when they initially interacted with the therapist, the children likely did not understand that they were making statements to the therapist for the purpose of diagnosis or treatment.

[19] However, "[t]he improper admission of evidence is harmless error when the judgment is supported by substantial independent evidence to satisfy the reviewing court that there is no substantial likelihood that the questioned

evidence contributed to the judgment." *In re Termination of Parent-Child Relationship of E.T.*, 808 N.E.2d 639, 645–46 (Ind. 2004) (citing *D.W.S. v. L.D.S.*, 654 N.E.2d 1170, 1173 (Ind. Ct. App. 1995)). And "[i]n bench trials, it is generally presumed that the trial judge disregards inadmissible evidence and renders its decision solely on the basis of relative and probative evidence." *In re A.J.*, 877 N.E.2d 805, 814 (Ind. Ct. App. 2007), *trans. denied*.

[20] The children's therapist's testimony concerning the children's fear of and anger with Father was based primarily on her observations of the children and the statements made to her during therapy. *See* Tr. pp. 102–20. The children's therapist also testified concerning her treatment plan and the goals she and the children are working on in therapy. *Id.* This testimony did not constitute inadmissible hearsay. And to the extent that the trial court erred by admitting certain hearsay statements, such error is harmless under the facts and circumstances of this case.

## Efforts to Reunify

[21] Next, Father argues that "DCS did not make a good faith effort to reunify Father with the children because it failed to make any referrals for him throughout the life of the children in need of services cases." Appellant's Br. at 18. "DCS is generally required to make reasonable efforts to preserve and reunify families during CHINS proceedings."[1] *In re H.L.*, 915 N.E.2d 145, 148

---

[1] However, this CHINS statutory provision is not a requisite element of our termination statute, and "failure to provide services does not serve as a basis on which to directly attack a termination order as contrary to

(Ind. Ct. App. 2009) (citing Ind. Code § 31-34-21-5.5)). But "[i]n determining the extent to which reasonable efforts to reunify or preserve a family are appropriate under this chapter, the child's health and safety are of paramount concern." I.C. § 31-34-21-5.5.

[22] Although Father encourages our court to consider the possibility that his convictions will be reversed on appeal or in post-conviction relief proceedings, we must consider the circumstances presently before us. Father is incarcerated for sixty-five years, and his earliest possible release date is in 2065. Due to his incarceration, DCS was unable to offer services to Father or to evaluate him to determine what services might benefit him. Under these circumstances, and most importantly, because Father is incarcerated for killing the children's mother, DCS's failure to offer reunification services to Father does not constitute a deprivation of his due process rights. *See In re H.L.*, 915 N.E.2d at 148; *Castro v. State Office of Family and Children*, 842 N.E.2d 367, 377 (Ind. Ct. App. 2006), *trans. denied*.

## Sufficient Evidence

[23] Finally, Father argues that the evidence is insufficient to support the termination of his parental rights. "The purpose of terminating parental rights is not to punish the parents but, instead, to protect their children. Thus, although

---

law." *In re H.L.*, 915 N.E.2d 145, 148 n.3 (Ind. Ct. App. 2009) (citing *In re E.E.*, 736 N.E.2d 791, 796 (Ind. Ct. App. 2000)).

parental rights are of a constitutional dimension, the law provides for the termination of these rights when the parents are unable or unwilling to meet their parental responsibilities." *In re A.P.*, 882 N.E.2d 799, 805 (Ind. Ct. App. 2008) (citation omitted). "[T]ermination is intended as a last resort, available only when all other reasonable efforts have failed." *Id.*

[24] A petition for the involuntary termination of parental rights must allege in pertinent part:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2).

[25] DCS must prove that termination is appropriate by a showing of clear and convincing evidence. *In re V.A.*, 51 N.E.3d 1140, 1144 (Ind. 2016). If the trial court finds that the allegations in a petition are true, the court shall terminate

the parent-child relationship. Ind. Code § 31-35-2-8(a). Finally, because Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, the trial court need only find that one of the three requirements of that subsection has been established by clear and convincing evidence. *A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1156 (Ind. Ct. App. 2013), *trans. denied.*

[26] Father argues that the trial court improperly terminated his parental rights "based upon criminal history and incarceration," because he was not afforded the presumption of innocence during the CHINS proceedings, and appeal of his convictions is still pending. Appellant's Br. at 14–15.

[27] The children were removed from Father's care because he was arrested and incarcerated for murder and arson. Father is still incarcerated and will likely remain incarcerated until 2065, at which time, Father's youngest child will be fifty-four years old. Father is currently unable to care for the children and will remain unable to care for them for the foreseeable future. Even if Father's convictions and sentence are reversed on appeal on some future date, the children require stability and permanency now.

[28] For these reasons, we conclude that DCS established by clear and convincing evidence that there is a reasonable probability that the conditions that resulted in the children's removal or the reasons for their placement outside Father's home will not be remedied. Therefore, we need not address the other factors listed in Indiana Code section 31-35-2-4(B)(2)(B). *See A.D.S.*, 987 N.E.2d at 1156.

[29] Father also argues that there is insufficient evidence that the termination was in the children's best interests. To determine whether termination of parental rights is in the best interests of a child, the trial court is required to look at the totality of the evidence. *In re D.D.*, 804 N.E.2d 258, 267 (Ind. Ct. App. 2004), *trans. denied*. In so doing, the court must subordinate the interests of the parents to those of the child involved. *Id.* Termination of the parent-child relationship is proper where the child's emotional and physical development is threatened. *In re R.S.*, 774 N.E.2d 927, 930 (Ind. Ct. App. 2002), *trans. denied*. The trial court need not wait until the child is irreversibly harmed such that his physical, mental, and social development is permanently impaired before terminating the parent-child relationship. *Id.* In addition, a child's need for permanency is a central consideration in determining the child's best interests. *In re G.Y.*, 904 N.E.2d 1257, 1265 (Ind. 2009). Further, the testimony of the service providers may support a finding that termination is in the child's best interests. *McBride v. Monroe Cty. Office of Family and Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003).

[30] In this case, Father destroyed his relationship with his children when he murdered their mother and burned down their home. Father caused significant harm and trauma to his children. Even considering the possibility that Father's convictions might eventually be reversed on appeal, the children require stability immediately. They have suffered long enough. The trial court's conclusion that termination is in the children's best interests is also supported by the opinions of their therapist and the DCS service providers.

## Conclusion

[31] Our court will reverse a termination of parental rights "only upon a showing of 'clear error'—that which leaves us with a definite and firm conviction that a mistake has been made." *Egly v. Blackford Cty. Dep't of Pub. Welfare*, 592 N.E.2d 1232, 1235 (Ind. 1992). We find no such error here and therefore affirm the trial court.[2]

May, J., and Brown, J., concur.

---

[2] Father also complains that the trial court misinformed him concerning his deadline for filing his notice of appeal. But Father filed his notice of appeal within the timeframe prescribed by Appellate Rule 9(A)(1) and has not established that he was prejudiced or harmed by the trial court's misstatement.