## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 27 2019, 8:57 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Clifford M. Robinson
Rensselaer, Indiana

ATTORNEYS FOR APPELLEE:
INDIANA DEPARTMENT OF
CHILD SERVICES

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Involuntary Termination of the Parent-Child Relationship of:<br>D.A. (Minor Child),<br>and<br><br>S.A. (Father),<br>*Appellant-Respondent,*<br><br>v.<br><br>The Indiana Department of Child Services,<br>*Appellee-Petitioner.* | November 27, 2019<br><br>Court of Appeals Case No.<br>19A-JT-1396<br><br>Appeal from the Jasper Circuit Court<br><br>The Honorable John Potter, Judge<br><br>Trial Court Cause No.<br>37C01-1811-JT-260 |

**Tavitas, Judge.**

# Case Summary

S.A. ("Father") appeals the termination of his parental rights to D.A. (the "Child"). We affirm.

# Issue

Father raises one issue, which we restate as whether Father's due process rights were violated by the failure to provide services to him during his incarceration.

# Facts

The Child was born in May 2016 to Father and J.B. ("Mother"). On May 26, 2016, the State charged Father in Boone County with unlawful possession of a firearm by a serious violent felon, a Level 4 felony, and carrying a handgun without a license, a Level 5 felony, in Cause No. 06D02-1605-F4-456 ("Cause 456"). On August 13, 2016, the State arrested Father and charged him in Jasper County with unlawful possession of a firearm by a serious violent felon, a Level 4 felony; disarming a law enforcement officer, a Level 5 felony; battery with bodily injury to a public safety officer, a Level 5 felony; and resisting law enforcement, a Level 6 felony, in Cause No. 37C01-1608-F4-661 ("Cause 661").

On November 28, 2016, Father pleaded guilty in Cause 661 to unlawful possession of a firearm by a serious violent felon, a Level 4 felony, and battery resulting in bodily injury to a public safety officer, a Level 5 felony. The trial

court sentenced Father to eleven years in the Department of Correction ("DOC"). On May 14, 2018, Father pleaded guilty in Cause 456 to unlawful possession of a firearm by a serious violent felony, a Level 4 felony, and he was sentenced to eight years in the DOC with two years suspended. The trial court ordered his sentence to be served consecutively to his sentence in Cause 661. Father's current release date is in 2028.

[5] On December 14, 2017, the Jasper County Department of Child Services ("DCS") removed the Child from Mother's care after it received a report that an overdose occurred at Mother's residence and that Mother abused drugs. Mother tested positive for methamphetamine at that time. Mother had been involved in three prior CHINS cases involving substance abuse.

[6] On February 9, 2018, the trial court found that the Child was a CHINS. A March 2018 dispositional decree ordered Mother to participate in services and ordered Father to sign releases. Mother, however, was not compliant with services and continued to test positive for methamphetamine.

[7] On November 27, 2018, DCS filed a petition to terminate Mother's and Father's parental rights to the Child. A hearing was held on the petition on May 20, 2019. The trial court entered findings of fact and conclusions of law

terminating Mother's and Father's parental rights to the Child.[1]  With respect to

Father, the trial court found:

> [Father] has been incarcerated at the Indiana DOC for nearly the
> entire life of the CHINS case.  His earliest possible release date is
> in 2028 at which time the child will be at least 12 years old.
>
> * * * * *
>
> Father was incarcerated at the time of removal and has remained
> incarcerated for all but 3 months of the child's life.  No services
> or visitations have been offered to him.  Further, Father has
> provided no proof to DCS that he participated in any services
> while in the DOC.
>
> Father cannot take care of the child while incarcerated and is not
> scheduled to be released until 2028.
>
> Therefore, Father is not a viable option for placement due to his
> lengthy incarceration[.] Father is currently incarcerated for two
> separate felony cases.  He is incarcerated for possession of a
> handgun by a violent felon and battery with bodily injury to a
> public safety officer.
>
> Father has had no relationship or bond with the child.  Father
> was only with the child for a short time when he was a baby and
> Father was on the run from criminal charges.

---

[1] Mother did not appear for the termination of parental rights hearing, and she does not participate in this
appeal.

Father has been able to reduce the time he is required to serve by obtaining his GED and participating in a problem solving course. He is currently on a waiting list for other courses and college classes.

* * * * *

Father understands the situation he has placed himself in with regards to the child.

* * * * *

Father cannot care for the child due to his incarceration.

Appellant's App. Vol. II pp. 24-25.  Father now appeals.

# Analysis

Father does not challenge the trial court's findings in support of termination of his parental rights under Indiana Code Section 31-35-2-4.[2]  Rather, Father

---

[2] Indiana Code Section 31-35-2-8(a) provides that "if the court finds that the allegations in a petition described in [Indiana Code Section 31-35-2-4] are true, the court shall terminate the parent-child relationship."  Indiana Code Section 31-35-2-4(b)(2) provides that a petition to terminate a parent-child relationship involving a child in need of services must allege, in part:

  (A)      That one (1) of the following is true:

        (i)      The child has been removed from the parent for at least six (6) months under a dispositional decree.

        (ii)      The court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

        (iii)      The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child.

  (B)      that one (1) of the following is true:

argues that his due process rights were violated by DCS's failure to provide him with services during his incarceration.

[9] DCS contends that Father waived any argument that he was deprived of due process rights by the failure to provide him with services. A parent may waive a due process claim in a CHINS or termination proceeding by raising that claim for the first time on appeal. *S.L. v. Indiana Dep't of Child Servs.*, 997 N.E.2d 1114, 1120 (Ind. Ct. App. 2013) (citing *McBride v. Monroe Cnty. Office of Family & Children*, 798 N.E.2d 185, 194-95 (Ind. Ct. App. 2003)). Father never raised a due process claim at the trial level; therefore, he has waived his constitutional challenge with respect to the termination proceedings.

[10] Waiver notwithstanding, Father's argument fails.[3] The Fourteenth Amendment to the United States Constitution provides that "no person shall be deprived of life, liberty, or property without due process of law." U.S. Const.

---

|      | (i)   | There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied. |
|------|-------|---|
|      | (ii)  | There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child. |
|      | (iii) | The child has, on two (2) separate occasions, been adjudicated a child in need of services; |
| (C)  |       | that termination is in the best interests of the child; and |
| (D)  |       | that there is a satisfactory plan for the care and treatment of the child. |

DCS must establish these allegations by clear and convincing evidence. *In re V.A.*, 51 N.E.3d 1140, 1144 (Ind. 2016).

[3] Father cites the Indiana Administrative Orders and Procedures Act and applies the arbitrary and capricious standard of review. The State properly points out that Father is appealing from a final judgment, not an agency decision, and this standard of review is inapplicable.

amend. XIV. "We have repeatedly noted that the right to raise one's children is more basic, essential, and precious than property rights and is protected by the Due Process Clause." *Hite v. Vanderburgh Cty. Office of Family & Children*, 845 N.E.2d 175, 181 (Ind. Ct. App. 2006). "When the State seeks to terminate the parent-child relationship, it must do so in a manner that meets the requirements of the due process clause." *Id.*

[11] We have long recognized, however, that the inability to provide services to an incarcerated parent does not amount to a denial of due process. *See In re H.L.*, 915 N.E.2d 145, 148 (Ind. Ct. App. 2009) (holding that DCS's failure to provide parental visitation and classes during the father's incarceration was not a denial of due process); *Castro v. State Office of Family & Children*, 842 N.E.2d 367, 377 (Ind. Ct. App. 2006) ("Because of Castro's incarceration, not only was the MCOFC unable to offer services to him, but it was unable to even fully evaluate him to determine what services are necessary. MCOFC's failure to offer services to Castro does not constitute a deprivation of his due process rights."), *trans. denied*; *In re S.K.*, 124 N.E.3d 1225, 1233 (Ind. Ct. App. 2019) (finding no denial of due process where the father was incarcerated for killing the children's mother and "DCS was unable to offer services to Father or to evaluate him to determine what services might benefit him"), *trans. denied*. Here, DCS was unable to provide services to Father due to his incarceration. The inability to provide such services did not result in a denial of Father's due process rights.

# Conclusion

[12] Father waived his due process argument. Waiver notwithstanding, DCS's inability to provide services to Father during his incarceration did not result in a denial of Father's due process rights. We affirm.

[13] Affirmed.

Brown, J., and Altice, J., concur.